UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Richard WARNER, Michael
Charles Ward,
Defendants-Appellants.

Nos. 79–5411, 80–5281.

United States Court of Appeals,
Sixth Circuit.

Argued May 26, 1982.

Decided Sept. 13, 1982.

Rehearing and Rehearing En Banc
Denied Nov. 17, 1982.

Joseph J. Jerkins, James H. Geary (argued), Kalamazoo, Mich., for Thomas R. Warner.

Arthur James Rubiner, Southfield, Mich. (court appointed), for Michael C. Ward.

John A. Smietanka, U. S. Atty., Robert C. Greene, Asst. U. S. Atty., Grand Rapids, Mich., Mervyn Hamburg, Margaret I. Miller (argued), U. S. Dept. of Justice, Washington, D. C., for the U. S.

Before KENNEDY, Circuit Judge, BROWN * and SWYGERT,** Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Appellants Thomas Richard Warner and Michael Charles Ward appeal from their convictions of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846, and of several counts of distribution of cocaine in violation of 21 U.S.C. § 841. On appeal, Warner contends that there was a prejudicial variance between the indictment and the proof, arguing that the evidence at trial showed multiple conspiracies while the indictment alleged that he participated in a single, wide-ranging conspiracy. He further contends that he was entitled to a jury instruction on multiple conspiracy. In addition, both Warner and Ward argue that the district court abused its discretion in denying their pretrial motions for severance. Ward also argues that the district court committed numerous other errors requiring reversal. We have reviewed these arguments in detail. Finding no reversible error, we affirm the convictions of both appellants on all counts, conspiracy and substantive.

## I.

Appellants were charged under a twenty-three count indictment filed on June 21, 1979, charging them and nineteen others with narcotics violations. Count 23 of the indictment alleged that appellants had participated in a wide-ranging conspiracy to distribute cocaine in the Western District of Michigan. In addition, appellant Ward was charged in Count 5 with distributing three

* Circuit Judge Bailey Brown retired from regular active service under the provisions of 28 U.S.C. § 371(b) on June 16, 1982, and became a Senior Circuit Judge.

** The Honorable Luther M. Swygert, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

grams of cocaine. Appellant Warner was named in four counts charging distribution of cocaine.

Prior to trial, thirteen defendants pleaded guilty. Four of the remaining defendants were granted a severance. Warner and Ward were tried with Donald Cobb and Bradley Schrock, the remaining two defendants.

The evidence at trial can be summarized as follows:

During the spring of 1978, Charles Willette, who later became the government's informant, and defendant Donald Cobb were partners in the business of buying and selling cocaine. A major source for their cocaine was Dennis McCarthy, a resident of Holland, Michigan.[1] Willette and Cobb regularly chartered airplanes to fly one or both of them from Traverse City, Michigan, where both resided, to Holland, Michigan, where they would meet McCarthy and purchase cocaine. They would then return to Traverse City and sell the cocaine at a profit. Willette testified that he was dealing in quarter pounds of cocaine every two to three days.

In May, 1978, McCarthy told Willette that a large cocaine dealer from Florida was coming to the Holland area. McCarthy identified the dealer as "M. W." and said that "M. W." delivered "the quantity" of cocaine to the Western Michigan area. McCarthy promised to introduce Willette to "M. W."

On May 23, 1978, Willette flew to Holland to purchase cocaine. McCarthy picked him up at the airport and took him to McCarthy's apartment, where Willette spent the night. The next day, McCarthy took Willette to Kalamazoo, Michigan, where they went to the home of defendant Bradley Schrock, who was one of McCarthy's cocaine suppliers. Willette, McCarthy, and Schrock then went to the Red Roof Inn, where Schrock had rented a room. From there, they went to the Valley Inn, also in Kalamazoo, where they met appellant Ward. Willette testified that he saw Ward open a briefcase. The briefcase contained vials of cocaine and a large amount of cash.[2] Ward told them he was selling the cocaine for $4,000 an ounce. After testing the cocaine for quality, McCarthy, Willette, and Schrock each purchased a gram of cocaine from Ward. They then returned to Schrock's motel room, where they consumed some of the cocaine.

In the meantime, employees at the company from which Willette and Cobb were chartering airplanes grew suspicious that the two men were dealing in illegal drugs. On May 23, 1978, the company's bookkeeper notified the Michigan State Police. The police arranged for two undercover officers to pilot the airplanes chartered by Willette and Cobb from the company. In addition, the police placed Willette and Cobb under surveillance.

In late June, 1978, Willette heard that the police were watching his house. According to Willette's testimony, he then decided to go to the federal government and confess to dealing in cocaine because he feared that he might be arrested and because he knew that there was a major network of people transferring cocaine all over the country. He met with an FBI agent and a state police officer, and thereafter Willette worked with law enforcement officials as an informant.

In July, 1978, Willette introduced an undercover police officer, Michael Pifer, to Cobb and McCarthy. Pifer, posing as a cocaine dealer, purchased cocaine from Cobb, McCarthy, and several other dealers whom he met through McCarthy. Two of these dealers were Gerald Mead and Timothy Dick.[3]

---

1. McCarthy, who was also charged under the indictment, pleaded guilty before trial and testified as a witness for the government.

2. McCarthy, who also testified about this incident, said that he did not see money in Ward's briefcase.

3. Mead and Dick, who were also charged under the indictment, pleaded guilty before trial and testified as witnesses for the government.

Dick and Mead testified that they were partners in a small cocaine business in Kalamazoo, Michigan, where they shared a house. During the period of the alleged conspiracy, appellant Warner was their only source of supply. Warner would "front" them large amounts of cocaine, which they would then try to sell. After making what profit they could on the cocaine, Mead and Dick would pay Warner what they owed him. Schrock and McCarthy both purchased cocaine from Mead and Dick on occasion.

On August 9, 1978, McCarthy telephoned Dick and told him that he had a friend (Officer Pifer) who wanted to buy four ounces of cocaine. Dick then called Warner, who said he would find out if the cocaine was available. Later that afternoon, McCarthy and Pifer went to Dick and Mead's house. Shortly after they arrived, Warner arrived carrying a thermos. Warner and Dick went to an upstairs bedroom. Warner opened the thermos, which contained three-fourths of a pound of cocaine. Warner and Dick then "cut" the cocaine with another white powdery substance. Dick sold two ounces of the diluted cocaine to Pifer for $3,980. In turn, Dick gave Warner $3,500. Warner left the remaining fourteen ounces of cocaine with Dick to see if he could sell any more of it.[4]

On August 15, 1978, McCarthy called Mead and told him he wanted four ounces of cocaine. Mead went to Warner's house to get the cocaine, which he then sold to Pifer for $7,600.

In late September, 1978, Pifer told Mead that he had a friend who wanted to buy a pound and a half of cocaine. Mead telephoned Warner, who agreed to sell him that amount for $40,000. On October 2, Warner delivered a pound and a half of cocaine to Mead's house. Dick and Mead sold the cocaine to Pifer at the Kalamazoo County Airport. Pifer then arrested them.

After nearly eleven hours of deliberation, the jury found both appellants guilty of the conspiracy charged in Count 23 of the indictment. In addition, Ward was convicted of one count of distribution of cocaine. Warner was convicted of three counts of distribution and acquitted on the remaining count with which he had been charged. Following the verdict, the district court dismissed Ward's conspiracy conviction on the ground that the evidence before the grand jury was insufficient to support that charge.[5] Ward was then sentenced to ten years' imprisonment, to be served consecutively to two other federal sentences previously imposed. The court also imposed a six year special parole term. The court sentenced Warner to concurrent ten year terms of imprisonment on each count, fined him $50,000, and imposed a five year special parole term. This appeal followed.

## II.

Appellant Warner's arguments on appeal center around his contention that the evidence at trial showed only multiple conspiracies rather than the single conspiracy charged in the indictment. He argues that the evidence showed at least two separate conspiracies, one involving cocaine transactions in the Traverse City-Holland area, and a smaller conspiracy in the Kalamazoo area involving himself, Mead, and Dick.

▮ If an indictment alleges one conspiracy, but the evidence can reasonably be construed only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Berger v. United States,* 295 U.S. 78, 81–82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Sutherland,* 656 F.2d 1181, 1195–96 (5th Cir. 1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). In determining whether the evidence showed single or multiple conspiracies, we must bear in mind

---

4. Warner later removed the cocaine because Dick was unable to sell it.

5. The government has not appealed from the dismissal of Ward's conspiracy conviction, and therefore it is not at issue.

that the essence of the crime of conspiracy is agreement. "[I]n order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Martino,* 664 F.2d 860, 876 (2d Cir. 1981) (citation omitted). However, the government is not required to prove an actual agreement among the various conspirators in order to establish a single conspiracy. In one form of conspiracy, often described as a "chain" conspiracy, the agreement can be inferred from the interdependent nature of the criminal enterprise. *United States v. Sutherland, supra* at 1190–91. Conspiracies to distribute narcotics, which normally involve numerous sales and resales of drugs until they reach the ultimate consumers, are often "chain" conspiracies. *United States v. Bynum,* 485 F.2d 490, 495–96 (2d Cir. 1973), *vacated and remanded on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). Because the success of participants on each level of distribution is dependent upon the existence of other levels of distribution, each member of the conspiracy must realize that he is participating in a joint enterprise, even if he does not know the identities of many of the participants. *United States v. Martino, supra* at 876; *see United States v. Moten,* 564 F.2d 620, 624–25 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 489, 54 L.Ed.2d 318 (1977) and *sub nom. Hightower v. United States,* 434 U.S. 942, 98 S.Ct. 438, 54 L.Ed.2d 304 (1977) and *sub nom. Foster v. United States,* 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 466 (1977); *United States v. Perry,* 550 F.2d 524, 531 (9th Cir.), *cert. denied,* 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977). Accordingly, a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy. *See Blumenthal v. United States,* 332 U.S. 539, 556–57, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947); *United States v. Mayes,* 512 F.2d 637, 642 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975) and *sub nom. Cook v. United States,* 423 U.S. 840, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975); *United States v. Goble,* 512 F.2d 458, 464–65 (6th Cir.), *cert. denied,* 423 U.S. 914, 96 S.Ct. 220, 46 L.Ed.2d 143 (1975).

■ In this case, viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we conclude that the government's proof at trial supported a finding of a single conspiracy to distribute cocaine, as charged in the indictment. This conspiracy was of the "chain" type we have described. The central figure in the conspiracy was McCarthy, who acted as a middleman. McCarthy obtained cocaine from a number of "wholesalers," including Schrock, Mead, and Dick. He then resold the cocaine to "retailers," such as Willette, Cobb, and Officer Pifer. During the early stages of the conspiracy, from April to June of 1978, Schrock was McCarthy's main supplier. In July, however, Schrock decreased his volume of cocaine sales because of pressure from his wife. McCarthy then began purchasing more cocaine from other sources, including Mead and Dick, who in turn obtained all their cocaine from appellant Warner.[6] In this manner, Warner became a source of supply for the conspiracy.[7]

> The agreement may continue for a long period of time and may include the performance of many transactions. New parties may join the agreement at any time while others may terminate their relationship. The parties are not always identical, but this does not mean that there are separate conspiracies.
> *Id.* at 742 (citation omitted); *accord, United States v. Boyd,* 595 F.2d 120, 123 (3d Cir. 1978).

---

**6.** McCarthy had one other major cocaine supplier during this period, who was not charged in this indictment.

**7.** The fact that Warner, Mead, and Dick entered the conspiracy relatively late does not preclude our finding that they were part of the single conspiracy alleged in the indictment. As the Seventh Circuit stated in *United States v. Varelli,* 407 F.2d 735 (7th Cir. 1969):

The first transaction in furtherance of the conspiracy in which Warner was shown to be involved shows the connection between the various members of the conspiracy after Warner, Mead, and Dick became involved. In July, 1978, Warner came to Mead's house with six ounces of cocaine and asked Mead to sell it. Mead took two ounces of the cocaine to sell, agreeing to pay Warner $1,900 an ounce after he sold it. Mead then sold the cocaine to Schrock, who paid him $1,000 and said that he would arrange to pay the rest of the money later. Schrock sold the two ounces to McCarthy. McCarthy paid Mead $1,000 and told Mead that another $1,000 would be wired to him. A few days later, Mead received a Western Union money order from Cobb for $1,975. McCarthy had sold a portion of the two ounces to Cobb and had told Cobb to pay Mead directly.

Warner contends that this was an isolated incident and was insufficient to show a conspiratorial connection between the "Kalamazoo dealers" (himself, Mead, and Dick) and the "Traverse City-Holland dealers" (McCarthy, Schrock, Willette, and Cobb).[8] We disagree. The record shows that McCarthy regularly purchased cocaine from Mead and Dick, which he then resold. In addition, Dick and Mead both testified that they knew Schrock and regularly sold him small amounts of cocaine for personal use.

More important, the evidence shows that the two groups of dealers were dependent upon one another for their success, a factor which indicates that they were part of a single conspiracy. *United States v. Tramunti,* 513 F.2d 1087, 1106–07 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). When McCarthy, Schrock, or Officer Pifer failed to purchase Warner's co-caine from Mead or Dick, it went unsold. Likewise, on one occasion McCarthy was unable to make a sale to Willette and Officer Pifer because he was unable to obtain the cocaine from Dick.

We conclude, therefore, that there was no variance between the indictment and the proof because the evidence can reasonably be construed as supporting a finding of one conspiracy. *United States v. Sutherland, supra* at 1189 n. 5. Warner argues, however, that even if the evidence showed a single conspiracy, the government failed to prove that he was a member of that conspiracy. Warner points out that he had no direct dealings with Mead's or Dick's customers. Many of the customers who testified did not know Warner and had never heard of Warner. However, as stated above, it is not necessary to prove that Warner knew every member of the conspiracy to sustain his conviction.

> [T]he defendant must know the purpose of the conspiracy, but not necessarily the full scope thereof, the detailed plans, operation, membership, or even the purpose of the other members of the conspiracy.

*United States v. Shermetaro,* 625 F.2d 104, 108–09 (6th Cir. 1980) (citations omitted). Although Warner had no direct dealings with most of the alleged co-conspirators, the evidence clearly shows that Warner knew that he was part of a cocaine distribution network that went beyond Mead and Dick, his immediate customers.[9] On several occasions, Warner gave Mead or Dick large quantities of cocaine on credit, with the understanding that they would pay him for it if they were able to resell it. These transactions show that Warner supplied cocaine to Mead and Dick with both the

---

**8.** The fact that a conspiracy can be divided into distinct sub-groups does not mean that there is more than one conspiracy. As long as the different sub-groups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy. *United States v. Boyd, supra* at 123; *United States v. Tramunti,* 513 F.2d 1087, 1106 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

**9.** According to Dick's testimony, it would be unlikely that a drug "wholesaler," such as Warner, would be acquainted with customers farther down the chain of distribution, such as Willette, McCarthy, and Cobb. Dick testified that he tried to keep Warner from meeting his customers, because Warner "could have cut me out" by dealing with them directly, thereby eliminating Dick's profit.

knowledge and the intent that it be further distributed.[10] We conclude from this evidence that Warner knew that he was participating in a collective venture with the common goal of distributing cocaine. Accordingly, we hold that his conspiracy conviction was supported by the evidence.

 Warner also contends that the district court committed reversible error in failing to give a multiple conspiracy instruction to the jury. Since Warner's counsel did not request a multiple conspiracy instruction and did not object when none was given, we cannot reverse his conviction on this basis unless we find that the court's failure to give such instruction was plain error. Rule 30, Fed.R.Crim.P.[11]

We agree with appellant Warner that, when the evidence is such that the jury could within reason find more than one conspiracy, the trial court should give the jury a multiple conspiracy instruction. *United States v. Sutherland, supra* at 1189 n. 5; *United States v. Cambindo Valencia,* 609 F.2d 603, 625 (2d Cir. 1979); *United States v. Perry,* 550 F.2d 524, 533 (9th Cir.), *cert. denied,* 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977). However, we decline to hold that the trial court's failure to give such instruction in this case was plain error. On the whole, the instructions given in this case were adequate. The district court instructed the jury that each defendant was only on trial for those acts charged in the indictment and that in considering the evidence, it must first determine whether a conspiracy existed "as charged in the indictment." The court also properly instructed the jury on the limited use of co-conspirators' declarations. We conclude that, although a multiple instruction would have been preferable, these instructions adequately informed the jury that Warner could only be convicted of a conspiracy alleged in the indictment of which he was a part. *See United States v. Rodgers,* 624 F.2d 1303, 1308 (5th Cir.), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1980); *United States v. Watson,* 594 F.2d 1330, 1340 (10th Cir. 1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1980).

Warner's final contention on appeal is that the district court committed reversible error in denying his pretrial motion for severance.[12] Warner relies both on Rule 8 and on Rule 14, Fed.R.Crim.P.

 Rule 8(b), Fed.R.Crim.P., provides that joinder of defendants is permissible if they are alleged to have participated "in the same series of acts or transactions constituting an offense or offenses." It is well settled that joinder is proper under Rule 8(b) where an indictment charges multiple defendants with participation in a single conspiracy. *E.g., United States v. Weinrich,* 586 F.2d 481, 495 (5th Cir. 1978), *cert. denied,* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979); *United States v. Dye.* 508 F.2d 1226, 1236 (6th Cir. 1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975). Accordingly, joinder was proper in this case, since the indictment alleged a single conspiracy between Warner and the other defendants.

---

**10.** The quantity of cocaine given to Mead and Dick by Warner on these occasions supports the inference that Warner intended that it be further distributed to other dealers. *See United States v. Prieskorn,* 658 F.2d 631, 634–35 n. 1 (8th Cir. 1981). Warner left a pound of cocaine with Dick in August, 1978. He left 10 12 ounces of cocaine with Mead in September, 1978. By contrast, Schrock, who purchased cocaine from Dick and Mead for personal use, never purchased more than seven *grams* at one time.

**11.** Appellant Ward also raises the issue of the district court's failure to give a multiple conspiracy instruction, and the record shows that his counsel did object to such failure. Since Ward's conspiracy conviction was set aside by the district court, and since we cannot see how a multiple conspiracy instruction would have had any bearing on the jury's verdict on the substantive count, we need not consider whether the court's failure to give such instruction was error as to appellant Ward.

**12.** Appellant Ward's motion for severance was also denied, and he too raises this issue on appeal. Since Ward's appeal raises different issues under Rules 8 and 14 than are raised by appellant Warner, we will deal with this issue separately as to each appellant.

Warner contends, however, that the district court should have ordered him tried separately because the joint trial was prejudicial to him. Rule 14, Fed.R.Crim.P., gives the district court the power to order a defendant tried separately where joinder will be prejudicial.

It is well settled that a district judge's denial of a motion for severance under Rule 14 is reversible only for an abuse of discretion. *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Frazier,* 584 F.2d 790, 795 (6th Cir. 1978); *United States v. Tarnowski,* 583 F.2d 903, 905 (6th Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1238, 59 L.Ed.2d 468 (1979). The defendant must make a showing of compelling prejudice before the trial court's ruling denying a Rule 14 severance will be disturbed. *See, e.g., United States v. Reed,* 647 F.2d 678, 689 (6th Cir.), *cert. denied,* 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981); *United States v. Bright,* 630 F.2d 804, 813 (5th Cir. 1980).

Warner argues that he was prejudiced by the "spillover" effect of evidence against his three codefendants concerning transactions in which he was not involved. Specifically, Warner argues that he was prejudiced by McCarthy's testimony that he and Schrock once tried unsuccessfully to "rip-off" Agent Pifer by selling him flour instead of cocaine, and that they planned on another occasion to rob Pifer. Warner also contends that he was prejudiced by testimony that appellant Ward made a death threat against Willette, the government's informant.

We agree that, when viewed in isolation, this testimony appears to be potentially prejudicial to Warner. However, after examining this evidence in the context of the entire trial, we conclude that it was not so prejudicial as to require a mid-trial severance. With regard to the "rip-off" attempt and planned robbery, the testimony on these matters was brief and was not argued to the jury. Warner's counsel did not object to this testimony or request a cautionary instruction about its proper use. We do not consider that the admission of this testimony was plain error and therefore is not a basis for reversal. Rule 103, Fed.R.Evid.

With regard to the testimony concerning Ward's death threat, the trial court carefully instructed the jury that this evidence was only to be considered against Ward. There is no reason to believe that the jury did not follow this instruction. *United States v. Franks,* 511 F.2d 25, 30 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975).

Finally, Warner argues that the prosecutor in rebuttal invited the jury to "lump together" the defendants because they shared a similar lifestyle, inviting the jury to find guilt by association.[13] When viewed in context, however, it appears that these remarks were made in response to Schrock's counsel's statement in closing argument that Schrock had no reason to sell cocaine because he was "independently wealthy." In the remarks now objected to by Warner, the prosecutor argued that the attraction that would bring a wealthy person like Schrock into the cocaine business was the lifestyle rather than the profit. We find that the prosecutor's remarks, when viewed in this context, were properly responsive to the arguments of Schrock's attorney. *United States v. Battista,* 646 F.2d 237, 244 (6th Cir.), *cert. denied,* 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981). Again, we note that there was no objection by defense counsel. *United States v. Renfro,* 600 F.2d 55, 59 (6th Cir.), *cert. denied,* 444 U.S. 941, 100 S.Ct. 294, 62 L.Ed.2d 307 (1979); *United States v. Black,* 480 F.2d 504, 506–07 (6th Cir. 1973).

---

**13.** The remarks objected to by Warner are as follows:

> It's the lifestyle, the attraction described by Willette, McCarthy, Dakoske, Dick and Mead. The midnight phone calls, the running here or there, the secrecy, the intrigue, the pressure, the tension of getting caught, the cars, the girls, the highs. It's the lifestyle. That's what brings us here today. That's what has brought the jury here today. That is what has brought the Defendants here today. You can't duplicate it unless you're involved in it, and that's what it comes down to.

We recognize that, in a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of the evidence relating to each defendant. *United States v. McLaurin,* 557 F.2d 1064, 1074 (5th Cir. 1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978). However, we adhere to the view, as previously stated by our court, that "[t]he jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately." *United States v. Frazier, supra* at 795, citing *United States v. Franks,* 511 F.2d 25, 30 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975). After reviewing the evidence in this case, we conclude that it was fairly straightforward and was unlikely to confuse the jury. Moreover the trial judge gave careful instructions that the evidence against each defendant was to be considered separately and that proof against each defendant was not to be used against any other defendant. The jury's verdict shows that it followed these instructions, making an individualized determination of each defendant's guilt as to each count; Warner was acquitted of one substantive count, and codefendant Cobb was convicted of a lesser included offense on one count. *See United States v. Alessi,* 638 F.2d 466, 475 (2d Cir. 1980); *United States v. Vida,* 370 F.2d 759, 765–66 (6th Cir. 1966); 8 *Moore's Federal Practice* ¶ 14.04[1] at 14–53 (1981). Accordingly, we conclude that the district judge did not abuse his discretion in denying Warner's motion for severance.

### III.

We now turn to the issues raised by appellant Ward. Since Ward's conspiracy conviction was set aside by the district judge, we need only consider arguments concerning the validity of his conviction of the substantive count.

Initially, we find that Ward's conviction of distribution of cocaine was supported by substantial evidence. The transaction for which Ward was convicted involved the sale of one gram of cocaine each to Willette, McCarthy, and Schrock at the Valley Inn on May 24, 1978. Willette and McCarthy both gave detailed testimony about this transaction and identified Ward as the man who sold them the cocaine.[14] There was also independent evidence to corroborate many of the details given by Willette, such as his testimony that he flew to Holland on May 23, was met at the airport by McCarthy, and drove to Kalamazoo with McCarthy the next day.

Ward argues that the district court erred in denying his motion for severance. Although joinder was initially proper under Rule 8(b), Fed.R.Crim.P., because Ward was charged in the conspiracy count, see pp. 553–554 *infra*, Ward's conspiracy conviction was later set aside by the district judge. This raises the issue of "retroactive misjoinder." *See* 8 *Moore's Federal Practice* ¶ 8.06[3] (1981); 1 C. Wright, *Federal Practice and Procedure* § 144 at 333 (1969). This problem arises where joinder was proper initially because of a conspiracy allegation, but where later developments, such as the district court's decision in this case months later to set aside Ward's conspiracy conviction, appear to render the initial joinder improper.

The leading case on "retroactive misjoinder" is *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In *Schaffer,* defendants were jointly tried on three substantive counts and one conspiracy count. At the close of the government's case, the district court dismissed the conspiracy count for failure of proof, but de-

---

**14.** Ward attacks the credibility of these witnesses by pointing out that some of their testimony regarding the details of the May 24 meeting was contradictory. While we agree that some of their testimony was contradictory, the credibility of witnesses is for the jury, not the appellate court, to decide. *United States v. Sizemore,* 632 F.2d 8, 13 (6th Cir. 1980).

Ward also contends that these contradictions show that the government used perjured testimony against him, since "one of them must have been lying." We disagree. It is to be expected that witnesses will remember certain details of an event differently, particularly when they are testifying sixteen months later.

clined to order separate trials, finding that the joint trial would not prejudice the defendants. The Supreme Court affirmed, holding that joinder as an initial matter was proper under Rule 8(b) and that subsequent severance was controlled by Rule 14, Fed.R.Crim.P. *Id.* at 515–16, 80 S.Ct. at 947–48. The Court stated that, where a conspiracy charge on which joinder was predicated is set aside, the trial court has a continuing duty under Rule 14 to order a severance if prejudice appears, but the court declined to hold that "when a conspiracy count fails, joinder is error as a matter of law." *Id.* at 516, 80 S.Ct. at 948.

■■■ We interpret *Schaffer* to mean that the propriety of a joint trial in the "retroactive misjoinder" situation is governed by the same standards as are applied in any case in which prejudicial joinder is alleged.[15] As we have already stated, pp. 553–554 *supra,* a district court's refusal to order a severance under Rule 14 may only be reversed if the defendant makes a showing of compelling prejudice. Appellant Ward has not made the required showing. Although it is true that there was a disparity in the quantity of evidence relating to Ward, as compared with the other three defendants, it is well settled that such disparity is not in itself sufficient to demonstrate prejudice under Rule 14. *E.g., United States v. Kendall,* 665 F.2d 126, 138 (7th Cir. 1981); *United States v. Mayes, supra,* 512 F.2d at 644–45; *United States v. Vida, supra,* 370 F.2d at 765. Ward also contends that, if tried separately, defendant Schrock would have testified on his behalf; however, Ward has never met his burden of producing evidence to show that Schrock would testify and that his testimony would be exculpatory. *E.g., United States v. Duzac,* 622 F.2d 911, 912 (5th Cir.), *cert. de-*

*nied,* 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *United States v. Boscia,* 573 F.2d 827, 832 (3d Cir.), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 41 (1978); *see United States v. Vaughn,* 422 F.2d 812, 813–14 (6th Cir. 1970). Finally, Ward's contention that he was prejudiced because the bulk of the evidence pertaining to the May 24 transaction was hearsay testimony admitted under the co-conspirator exception is lacking in merit. We have reviewed the evidence carefully and have found that most of the evidence against Ward was direct, non-hearsay testimony which would have been admissible at a separate trial. *United States v. Vida, supra,* 370 F.2d at 765. In view of the testimony of McCarthy and Willette that they purchased cocaine from Ward and the corroboration of such testimony by other evidence, we believe that the admission of such hearsay was harmless.

■■■ Ward's remaining contentions can be disposed of summarily. Ward claims that the district court should have dismissed the substantive count as well as the conspiracy count on the ground that there was insufficient evidence before the grand jury to support it. The Supreme Court has stated, however, that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence . . . ." *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *accord, Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Short,* 671 F.2d 178, 181–83 (6th Cir. 1982), *cert. denied,* —— U.S. ——, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982). The district court's refusal to set aside Ward's conviction of the substantive count on this basis was proper.

---

**15.** We recognize, of course, that the trial judge must be "particularly sensitive" to the possibility of prejudice where the initial charge on which joinder was predicated turns out to be baseless. *Schaffer, supra,* 362 U.S. at 516, 80 S.Ct. at 948. We also agree with those circuits that have suggested that relief be available regardless of prejudice if the prosecutor acted in bad faith in bringing the initial conspiracy charge. *See United States v. Sanders,* 563 F.2d

379, 383 (8th Cir. 1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 767 (1978); *United States v. Nims,* 524 F.2d 123, 126 (5th Cir. 1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976); *Brandom v. United States,* 431 F.2d 1391, 1396 (7th Cir. 1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634 (1971); *Stern v. United States,* 409 F.2d 819, 820 (2d Cir. 1969). There is no evidence of bad faith in this case.

■ Ward also objects to the district court's dismissal of a juror who had slept through some of the testimony. There were sixteen jurors, four of whom were to be dismissed as alternates after all the evidence had been presented. During the government's case, appellant Warner's attorney brought the sleeping juror to the court's attention. He requested that she be one of the four who would be dismissed as alternates. None of the defense counsel objected to this procedure, and the judge dismissed the sleeping juror along with three jurors who were randomly selected. Fed.R.Crim.P.

Rule 24(c), Fed.R.Crim.P., authorizes the trial court to replace jurors who are found to be unable to perform their duties. Rule 24(c) authorizes the dismissal of sleeping jurors, since a juror who sleeps through much of the trial testimony cannot be expected to perform his duties. *United States v. Smith,* 550 F.2d 277, 285 (5th Cir.), *cert. denied sub nom. Wallace v. United States,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977); *United States v. Cameron,* 464 F.2d 333, 335 (3d Cir. 1972). Accordingly, we conclude that the district court's dismissal of the sleeping juror was properly within its discretion.

■ Ward's contention that the district court improperly increased his sentence is likewise without merit. At the sentencing hearing, the district court failed to sentence Ward to a special parole term. 21 U.S.C. § 841(b)(1)(A) requires the imposition of a special parole term of at least six years whenever a defendant with a prior conviction is sentenced to a term of imprisonment. Since Ward had a prior conviction under 21 U.S.C. § 841, the district court was required to sentence Ward to a six year special parole term. Accordingly, the district court imposed a special parole term in its judgment and commitment order. Ward contends that this "increase" in his sentence violated the Double Jeopardy Clause of the Fifth Amendment. However, every circuit that has considered this issue has held that the Double Jeopardy Clause does not prohibit amending a sentence to add a mandatory special parole term. *United States v. Connally,* 618 F.2d 553, 556 (9th Cir. 1980); *United States v. Davis,* 183 D.C.App. 121, 561 F.2d 1014, 1018, *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977); *Bell v. United States,* 521 F.2d 713, 716 (4th Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); *Mayfield v. United States,* 504 F.2d 888, 889 (10th Cir. 1974); *United States v. Richardson,* 498 F.2d 9, 10 (8th Cir.), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 494, 42 L.Ed.2d 294 (1974); *Thompson v. United States,* 495 F.2d 1304, 1306 (1st Cir. 1974), *Caille v. United States,* 487 F.2d 614, 616 (5th Cir. 1973); *see* Fed.R. Cr.P. 35. We agree with the reasoning of these cases and accordingly reject Ward's double jeopardy claim.[16]

■ Appellant Ward also contends that he received ineffective assistance of counsel at trial. Our review of the record, however, convinces us that Ward's attorney performed "at least as well as a lawyer with ordinary training and skill in the criminal law . . . ." *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974). Ward's attorney succeeded in having important evidence suppressed at trial. He also filed the post-conviction motion which resulted in the court's dismissal of Ward's conspiracy conviction. The record reveals that Ward received competent, aggressive representation by his trial counsel.

We have considered Ward's remaining contentions and find that they are lacking in merit.

Accordingly, the judgments of conviction as to each appellant are AFFIRMED.

SWYGERT, Senior Circuit Judge, dissenting. I respectfully dissent.

I

In my judgment the record unequivocally shows that multiple conspiracies were

---

**16.** *United States v. Adams,* 362 F.2d 210 (6th Cir. 1966), is not to the contrary. In *Adams,* this court held that the Double Jeopardy Clause prohibited the court from vacating a *legal* sentence and imposing a more severe sentence.

Likewise, *United States v. Matlock,* 491 F.2d 504 (6th Cir.), *cert. denied,* 419 U.S. 864, 95 S.Ct. 119, 53 L.Ed.2d 100 (1974), upon which Ward relies, did not involve the correction of an illegal sentence.

proved instead of the single conspiracy as charged. Thus, a fatal variance between the indictment and the proof requires reversal of Warner's conviction on the conspiracy charge. The following scheme illustrates the point.

```
 Charles Willette
 Donald Cobb
 Traverse City, Michigan
 business partners
 buying and selling cocaine
 ↑
 |
 |
 Dennis McCarthy
 Holland, Michigan
 middleman or independent contractor
 ↑
 ┌────→────┘ └────←────┐
 | |
 Bradley Schrock Gerald Mead
 Holland, Michigan Timothy Dick
 supplier Kalamazoo, Michigan
 suppliers
 ↑ ↑
 | |
 Michael Ward Thomas Warner
 source source
```

## II

The Holland-Traverse City drug sales started in the spring of 1978 and ended in June 1978. The Kalamazoo sales started in July 1978 and ended in September 1978. The Government produced no evidence that Warner participated in the Holland-Traverse City operation or was aware of it. The Government's evidence against Ward had the same insufficiency with respect to his involvement in the Kalamazoo operation. Each operation was a separate, independent operation conducted at different times and in different places.

McCarthy, of course, was the central figure in both operations, but the *sine qua non* of a conspiracy, an agreement, was lacking between the McCarthy/Schrock/Ward group and the McCarthy/Dick/Mead/Warner group. The lower side of the triangle is missing.

```
 McCarthy
 / \
 / \
 Holland — — — — — Kalamazoo
```

The Government relies heavily on one isolated transaction to show a cross connection between the two groups. According to McCarthy, who testified as a Government witness after entering a plea bargain agreement, Mead obtained two ounces of cocaine from Warner and delivered it to Schrock. Schrock sold it to McCarthy. McCarthy ultimately sold the cocaine to Cobb, and Cobb wired part of the purchase price directly to Mead. McCarthy further testified that he thought he was selling the two ounces of cocaine to Schrock for Schrock's personal consumption. Mead, who also became a Government witness after plea bargaining, testified that he did not know why he received the money from Cobb or how Cobb participated in the transaction. Contrary to the majority's view, I believe this isolated incident was insufficient to show a conspiratorial agreement between the two groups.

When a single conspiracy is charged, "the general test is whether there was one overall agreement to perform various functions to achieve the objective of the conspiracy." *United States v. Zemek,* 634 F.2d 1159, 1167–68 (9th Cir. 1980). That test was not met here. The two groups were separated by time and method. There was no interchange or interdependence between the suppliers Warner and Ward. The Government argues and the majority agrees that an overall agreement was shown because the "two groups of dealers were dependent upon one another for their success...." (Maj. op. at 550.) The majority treats the two groups as one large business venture. What really exists is two competitors. Using a hypothetical, simply because Sears, Roebuck & Company and Montgomery Ward both sell the same customer a television set at different times does not make them part of a single enterprise. Likewise, simply because Ward and Warner through separate chains of distribution both sold cocaine to McCarthy does not make them part of a single enterprise. I suspect the majority's willingness to lump these competitors together is engendered in part by the illicit nature of the commodity they trade.

Given the lack of an overall single conspiracy, Warner's conviction on the three

substantive counts with which he was charged should be vacated. There is no question in my mind that the "spillover" effect of the evidence not directly aimed at the substantive charges was so prejudicial to Warner that harmless error should not be used to affirm the convictions on these charges. A massive amount of evidence relating to other defendants and participants in other drug operations was received and would not have been admitted absent the conspiracy charge. The *Kotteakos* effect cannot be denied. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1944).

## III

Michael Ward was indicted for distributing one gram of cocaine (Count 5) and conspiracy to possess and distribute cocaine (Count 23). The jury convicted Ward on both counts. Subsequently the trial judge vacated Ward's guilty verdict on the conspiracy count. On the substantive count, the judge sentenced Ward to ten years' imprisonment. The question before us is whether the guilty verdict on the substantive count can stand in light of the dismissal of the conspiracy count against Ward.

I recite the direct evidence against Ward on the substantive count. On May 24 or May 25, 1978 Willette, in the company of Schrock and McCarthy, went to a hotel room in the Valley Inn in Kalamazoo, Michigan. He was shown cocaine and a large sum of money. He described Ward's briefcase as containing about sixty vials of cocaine and a quantity of $50 and $100 bills. He thought the cocaine was good quality. They used the cocaine at that time and Willette described the experience as one of numbness and lethargy and a feeling of well-being. The three men each purchased a gram and shortly thereafter used their purchase. Willette had previously testified before the grand jury that the man he had bought the gram from was known to him as "M.W." During the trial Willette admitted lying to the grand jury. McCarthy, after testifying to the promises made for his testimony, testified that he bought one gram.

He stated that Ward had a pound of cocaine, but that he saw no money and that he had earlier characterized Willette as a "habitual liar."

The direct evidence against Ward is not very strong. No cocaine was ever introduced into evidence and the credibility of the witnesses who testified against him was subject to doubt. Willette was a confessed liar and both Willette and McCarthy testified after making deals with the Government. Further, their testimony conflicted over the simple observation of whether a briefcase contained a large sum of money. Given this weak evidence, it is inconceivable that the jury, despite a limiting cautionary instruction, was not influenced by the massive amount of evidence on the conspiracy charge. I believe the testimony concerning cocaine dealing among Cobb, Willette, Schrock, and McCarthy and among McCarthy, Mead, Dick, and Warner created a "spillover" which required the trial judge to effect a "retroactive" severance and grant a new trial to Ward. Harmless error has no place in this case. As with Warner, the *Kotteakos* effect cannot be denied. My reading of *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1950), does not compel a different result. The following language by Justice Clark is critical:

> It appears that not only was no prejudice shown, but both the trial court and the Court of Appeals affirmatively found that none was present. We cannot say to the contrary on this record. Nor can we fashion a hard-and-fast formula that, when a conspiracy count fails, joinder is error as a matter of law. We do emphasize, however, that, in such a situation, the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear.

I believe that on the facts of this case, prejudice has been shown.

In summary, I would reverse Ward's conviction on Count 5 and remand for a new trial. I would also reverse Warner's conviction and remand for a new trial on the substantive counts.