919 F.2d 739
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis HILL, Defendant-Appellant.
 No. 90-3403.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1990.
 
 Before KENNEDY and MILBURN, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Curtis Hill appeals his convictions for bank robbery in violation of 18 U.S.C. Secs. 2113 and 2, and for conspiracy to commit bank robberies in violation of 18 U.S.C. Sec. 371. For the reasons that follow, we affirm.
 
 I.
 
 2
 On March 17, 1988, the Third National Bank in Sandusky, Ohio, was robbed by a black man dressed in a suit and an overcoat who wore a blond wig. On July 9, 1988, the National City Bank in Elyria, Ohio, was robbed by a well-dressed black man who wore a reddish wig and carried two briefcases. On August 5, 1988, Bank One of Boardman, Ohio, was robbed by a black man in a business suit who wore a reddish wig. In each instance, the robber carried a briefcase, and he gave a note to the bank manager stating that he was carrying a bomb.
 
 
 3
 The robber of the Boardman bank was arrested as he exited the bank on August 5, 1988. He was later identified as David Hill, the brother of defendant-appellant Curtis Hill. After his arrest, David Hill was placed in an identification lineup, and witnesses of the Sandusky and Elyria robberies identified him as the person who robbed those banks. During interrogation after his arrest, David Hill denied that anyone else was involved in the robberies.
 
 
 4
 On October 28, 1988, the First National Bank of Ohio in Copley, Ohio, was robbed by a black man who wore a suit and an overcoat and carried a briefcase. On February 3, 1989, the National City Bank in Euclid, Ohio, was robbed by a well-dressed black man who carried a briefcase. In these two instances, the robber gave the bank manager a note with instructions to call a certain telephone number. When the manager called the number, a man answered the telephone and said that the robber had a bomb, and he instructed the manager to fill the robber's briefcase with cash.
 
 
 5
 On March 17, 1989, a black man wearing a suit and carrying a briefcase attempted to rob the Ameritrust Bank in Cleveland, Ohio. The robber approached the bank manager and handed her a folder which contained a note. Before the manager could read the entire note, the robber opened his briefcase and showed her what appeared to be a bomb. The manager told the robber that she had no way of getting into the vault, but he insisted that she try to open it. When the manager was unable to open the vault, the robber left the bank, and he was arrested shortly thereafter and identified as Thomas Taylor. The driver of the getaway car, Ricky Johnson, was also arrested approximately two blocks from the bank shortly after the attempted robbery.
 
 
 6
 On September 21, 1989, defendant-appellant Curtis Hill was charged in a superseding indictment with one count of conspiracy to commit bank robbery in violation of 18 U.S.C. Sec. 371 (Count I), two counts of bank robbery in violation of 18 U.S.C. Secs. 2113(a) and 2 (Counts II and IV), and one count of carrying or using a firearm unlawfully in relation to the commission of a bank robbery in violation of 18 U.S.C. Secs. 924(c)(1)(2) and 2 (Count III). Hill entered a plea of not guilty, and his trial commenced on November 14, 1989. Ricky Johnson, who was charged with bank robbery for his role in the attempted robbery of the Ameritrust Bank in Cleveland on March 17, 1989, pleaded guilty and agreed to cooperate with the FBI.
 
 
 7
 Johnson testified at the trial that he met Curtis Hill in late February or early spring 1988, and that Hill told him that he and his brother, David Hill, had robbed a bank in Sandusky, Ohio. Hill later told Johnson more details about the Sandusky bank robbery. Johnson and Hill began socializing on a regular basis, and in June 1988 Hill told Johnson that he and his brother were planning to rob another bank. Johnson testified that Hill called him on July 9, 1988, shortly after the robbery of the Elyria bank and told him that it had been successful.
 
 
 8
 Johnson testified that later in July of 1988 Hill told him about a robbery planned for the Boardman-Youngstown, Ohio, area, using the same modus operandi as the previous robberies. The Boardman robbery occurred on August 5, 1988, and Hill stopped by Johnson's apartment later that day to tell Johnson that David Hill had been arrested shortly after he left the bank.
 
 
 9
 After David Hill's arrest, Curtis Hill began talking to Johnson about robbing banks, and Johnson suggested recruiting Christopher Pore, a friend of his. Johnson testified that Hill agreed to bring Pore in, and the three men began scouting the Akron and Canton, Ohio, areas for a bank to rob. According to Johnson, on October 28, 1988, Pore entered the First National Bank in Copley, Ohio, and gave a note to the manager with instructions to call a certain telephone number. Johnson further testified that he was the man on the telephone who instructed the bank manager to fill Pore's briefcase with cash. The robbery netted approximately $100,000, which was split approximately three ways among Hill, Johnson, and Pore.
 
 
 10
 Johnson testified that in January 1989, he, Hill, and Brian Perry began planning another bank robbery. Perry learned about the Copley robbery from Pore, and he wanted to get in on the action. Johnson testified that Perry was selected to be the one who entered the bank, and the robbery was rehearsed at Johnson's residence with Hill, Perry, Johnson, and Johnson's wife, Flora, all present. Johnson testified that the men selected a bank in Euclid, Ohio, and that he and Perry carried out the robbery.
 
 
 11
 Johnson testified that approximately two weeks after the Euclid robbery, he and Hill talked about committing another robbery. This planning resulted in an unsuccessful attempt to rob the Huntington National Bank in Maple Heights, Ohio, on February 27, 1989. After the unsuccessful attempt, Johnson and Hill began planning another bank robbery. Johnson testified that he and Hill decided to bring Christopher Pore back in for the next robbery. On March 3, 1989, the three men went to the area of the Dollar Bank in Maple Heights, Ohio, and Pore entered the bank to rob it, but he left the bank because the manager he requested to see was not there.
 
 
 12
 According to Johnson, Pore became reluctant to rob another bank so Thomas Taylor was brought in to be the person who entered the bank. Johnson testified that Hill ceased casing banks with him because Hill believed that he was under FBI surveillance. However, Johnson testified that he continued to communicate with Hill and that Hill briefed Taylor on what to look for once inside the bank vault. On March 17, 1989, Johnson and Taylor attempted to rob the Ameritrust Bank in Cleveland, Ohio, and both men were arrested.
 
 
 13
 Johnson's wife, Flora, testified at the trial that she first learned of her husband's involvement in bank robberies in October of 1988. She testified she was present and overheard her husband and Hill plan various bank robberies. Flora Johnson further testified that she rehearsed robberies with her husband, Hill, and others by playing the role of the bank manager. Flora Johnson also corroborated her husband's testimony that Hill was involved in planning the Ameritrust Bank robbery during which Johnson and Taylor were arrested.
 
 
 14
 On November 21, 1989, the jury returned verdicts of guilty as to Counts I (conspiracy to commit bank robbery), II and IV (bank robbery charges), but the jury could not reach a decision as to Count III. Hill was sentenced to a term of imprisonment of sixty months on Count I and 240 months on each of Counts II and IV, with all counts to be served concurrently for a total sentence of 240 months. The charge in Count III was dismissed on motion of the government. This timely appeal followed.
 
 
 15
 The principal issues on appeal are: (1) whether the defendant was prejudiced by a variance between the indictment and the evidence, (2) whether the district court's failure to give a multiple conspiracy jury instruction was reversible error, (3) whether Federal Rule of Evidence 404(b) was violated by the admission of evidence of other crimes, wrongs or acts, and (4) whether the defendant was denied effective assistance of counsel.
 
 II.
 A.
 
 16
 The defendant argues that the evidence at trial showed six distinct conspiracies rather than the single conspiracy charged in the indictment. He asserts that each conspiracy involved a different partnership with different people, a different goal, and different overt acts. The defendant contends that he was prejudiced by the variance between the indictment and the evidence, and he argues that the variance warrants reversal of his convictions.
 
 
 17
 "If an indictment alleges one conspiracy, but the evidence can reasonably be construed only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982). "Whether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury under proper instructions and to be considered on appeal in the light most favorable to the government." United States v. Grunsfeld, 558 F.2d 1231, 1238 (6th Cir.) (per curiam), cert. denied, 434 U.S. 872 (1977). "This determination, 'in the light most favorable to the government,' must be made without weighing the evidence or determining witness credibility." United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988) (per curiam), cert. denied, 488 U.S. 1031 (1989).
 
 
 18
 Viewing the evidence in the light most favorable to the government, we hold that it supports a finding of a single conspiracy to commit bank robberies as charged in the indictment. In Warner, we observed "that the essence of the crime of conspiracy is agreement." 690 F.2d at 549. "However, the government is not required to prove an actual agreement among the various conspirators in order to establish a single conspiracy." Id. Moreover, "[t]he fact that a conspiracy can be divided into distinct sub-groups does not mean that there is more than one conspiracy. As long as the different sub-groups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy." Id. at 550 n. 8.
 
 
 19
 The evidence in this case can reasonably be construed to support the government's contention that there was a single conspiracy. The fact that different groups of people committed the various robberies does not establish that there was more than one conspiracy. Warner, 690 F.2d at 550 n. 8. The agreement to commit bank robberies continued over a period of approximately one year with new people joining the agreement at times while others terminated their participation in the conspiracy. The different participants and different robberies do not necessarily establish separate conspiracies. As this court has noted, "a single conspiracy does not become multiple conspiracies simply because of personnel changes...." Rios, 842 F.2d at 873. Accordingly, "[i]t cannot be said that the evidence is such that a reasonable juror could only find that multiple conspiracies had been proven." Id. (emphasis in original).
 
 B.
 
 20
 The defendant contends that the district court's failure to give a multiple conspiracy instruction warrants reversal of his convictions. Since the defendant did not request a multiple conspiracy instruction and did not object when none was given, we can reverse his convictions on this basis only by finding that the district court's failure to give the instruction was plain error. Warner, 690 F.2d at 551. In Warner, we observed that "when the evidence is such that the jury could within reason find more than one conspiracy, the trial court should give the jury a multiple conspiracy instruction." Id. However, we concluded that the trial court's failure to give the instruction was not plain error since the instructions given in the case adequately informed the jury that the defendant "could only be convicted of a conspiracy alleged in the indictment of which he was a part." Id.
 
 
 21
 As in Warner, the district court in this case instructed the jury that it must find beyond a reasonable doubt "that the conspiracy alleged in the indictment was willfully formed and that the defendant willfully became a member of the conspiracy...." The district court also informed the jury of the limited use of co-conspirators' acts or declarations by instructing that "in determining whether this defendant was a member of the conspiracy ... the jury should consider only his acts and statements." Accordingly, we hold that the district court's failure to give a multiple conspiracy instruction was not plain error since "these instructions adequately informed the jury that [the defendant] could only be convicted of a conspiracy alleged in the indictment of which he was a part." Warner, 690 F.2d at 551.
 
 C.
 
 22
 Continuing his theme that the government proved six conspiracies rather than a single conspiracy, the defendant asserts that proof of separate conspiracies was included in the evidence in violation of Federal Rule of Evidence 404(b). The defendant argues that evidence of these other acts would not have been admitted if each robbery had been properly tried as a separate conspiracy.
 
 
 23
 The defendant's reliance on Rule 404(b) is misplaced. Rule 404(b) provides:
 
 
 24
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 25
 Fed.R.Evid. 404(b). Rule 404(b) does not prohibit the introduction of evidence of the crimes charged in the indictment. "Rule 404(b) only applies to evidence of acts extrinsic to the charged crime." United States v. Record, 873 F.2d 1363, 1372 n. 5 (10th Cir.1989). The evidence identified by the defendant as inadmissible under Rule 404(b) was offered as direct evidence of the alleged conspiracy. "In cases where the incident offered is part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an 'other' crime." United States v. Angelilli, 660 F.2d 23, 39 (2d Cir.1981), cert. denied, 455 U.S. 910 (1982) (quoting 22 C. Wright & K. Graham, Federal Practice and Procedure Sec. 5239 at 450 (1978)). "Since the acts were part of the conspiracy, evidence of their occurrence was admissible to prove the conspiracy, regardless of whether they were performed by the defendant[ ] or by other coconspirators." Id.
 
 D.
 
 26
 Finally, the defendant argues that he was denied effective assistance of counsel because his attorney failed to object to the variance between the evidence and the indictment, failed to request a judicial determination as to the number of conspiracies prior to trial, failed to request an instruction as to multiple conspiracies and failed to object when none was given, and failed to object to introduction of "other acts" evidence. However, the defendant did not present this claim to the district court, and we "will not review an ineffective assistance of counsel claim raised for the first time on appeal." United States v. Swidan, 888 F.2d at 1076, 1081 (6th Cir.1989).
 
 III.
 
 27
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.