NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0552n.06

No. 08-5898

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 26, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| TYRONE MONTGOMERY, | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | OPINION |

Before: BATCHELDER, Chief Judge; WHITE, Circuit Judge; and GREER, District Judge.[*]

**GREER, District Judge**. Defendant-Appellant, Tyrone Montgomery ("Montgomery"), appeals his convictions for distributing crack cocaine and for possessing with the intent to distribute crack cocaine and powder cocaine. Montgomery argues that the district court erred by denying his motion to dismiss the indictment on Speedy Trial Act grounds and that the district court erred by failing to suppress evidence. Montgomery also raises claims of ineffective assistance of counsel. For the reasons that follow, we AFFIRM the judgment of the district court, and we decline to reach Montgomery's claims of ineffective assistance of counsel, without prejudice to Montgomery's right to raise the claims in a proceeding pursuant to 28 U.S.C. § 2255.

---

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I.    Factual and Procedural Background

On February 26, 2007, a confidential informant named Steven Auberry ("Auberry") called Montgomery to set up a crack cocaine deal. On February 27, Auberry, using money provided by the Drug Enforcement Administration ("DEA") and the Hardin County Kentucky Drug Task Force, purchased approximately three ounces of crack cocaine from Montgomery. The purchase took place at Montgomery's residence at 1117 Plum Run Road in Bardstown, Kentucky.

On March 13, Auberry called Montgomery to arrange an additional purchase of four ounces of cocaine. Auberry was instructed by Montgomery to come to the Plum Run Road address. Before Auberry arrived at Montgomery's residence, surveillance agents observed Montgomery sitting on the porch at the Plum Run Road house, apparently waiting for Auberry. When Auberry arrived, Montgomery got in the passenger side of Auberry's truck and they left. Montgomery told Auberry that he did not have any crack cocaine at the Plum Run Road address and had to go to another place to get it. Law enforcement officers followed Montgomery and Auberry to a second house at 106 Guiness Court in Bardstown. While Auberry waited in the truck, Montgomery went inside the house. Officers then watched Montgomery return to the truck and Montgomery and Auberry returned to 1117 Plum Run Road. Montgomery delivered 111.6 grams of crack cocaine to Auberry.

Shortly afterwards, Montgomery left the Plum Run Road house and was stopped a short distance away by a Nelson County Sheriff's deputy. Montgomery was returned to the Plum Run Road house where a search warrant issued by Kentucky Circuit Court Judge Charles Simms was executed. Agents found the money paid by Auberry for the purchase of the four ounces of crack cocaine in a bedroom closet. After the search, Detective Sergeant Thomas R. Roby, Jr., the lead

investigator, returned to Judge Simms to obtain a search warrant for the Guiness Court address where Montgomery had been taken to retrieve the crack cocaine. During that search, agents found 45.2 grams of crack cocaine and 334.7 grams of powder cocaine in a bedroom closet, along with a set of scales.

Montgomery was interviewed after the search by DEA Special Agent Duane Standafer. Standafer advised Montgomery of his *Miranda* rights and, after waiving his rights, Montgomery told Standafer that he was renting the Plum Run Road house but refused to identify the owner. Montgomery also disclosed that, although he did not live at the Guiness Court house, he stayed there on occasion and kept clothing there.

Montgomery was charged by criminal complaint on March 14, 2007, and made an initial appearance on the same date. Counsel was appointed and a preliminary hearing and detention hearing were scheduled for March 16. Montgomery subsequently waived a preliminary hearing, was ordered detained, and his arraignment was scheduled for April 17. Montgomery was indicted on April 2, 2007, by a federal grand jury and charged with two counts of possession with the intent to distribute and distributing 50 grams or more of crack cocaine and one count of possession with the intent to distribute both crack and powder cocaine. Montgomery was arraigned on April 17, and trial was set for June 18. On May 23, a joint motion to continue the trial date was filed. The district court granted the motion on June 11 and further proceedings were scheduled for July 30.

On July 15, Montgomery filed a motion to suppress evidence seized during both the Plum Run Road and the Guiness Court searches. The government's response was due July 30. On July 27, the government moved for an extension of time to respond to the motion to suppress. On August

3, the district court ordered that Montgomery supplement the motion to suppress by August 13, that the government respond by August 27, and that Montgomery's reply be filed by September 10. On August 13, Montgomery filed a supplemental brief in support of his motion to suppress. The government response was filed on September 18, after an extension of time was granted. No reply was filed by Montgomery. The government filed a supplement to its response, without objection, on October 3. On October 22, the district court denied the motion to suppress. No new trial date was set.

On January 15, 2008, Montgomery filed a motion to dismiss for violation of the Speedy Trial Act. The government responded to the motion to dismiss on February 4 and the district court denied the motion on March 5, setting Montgomery's jury trial for March 24. On March 17, Montgomery filed a motion for reconsideration of the court's March 5 order and a motion to continue the trial date. An evidentiary hearing on Montgomery's motion to reconsider was held on March 19. On March 24, the district court denied the motion to reconsider and the motion to continue the trial. Montgomery's jury trial began as scheduled and, on March 26, Montgomery was convicted on all counts of the indictment. Montgomery was sentenced to 288 months of imprisonment on June 27.

## II.     Analysis and Discussion

### A.     The Speedy Trial Act Claim

We look first to Montgomery's claim of violation of the Speedy Trial Act, since if that claim is meritorious, we would not need to address any other assignments of error. This is also the most difficult of the issues presented by Montgomery, the one to which the majority of the briefing was addressed, and the only issue addressed by Montgomery's counsel at oral argument.

We review *de novo* the district court's interpretation of the Speedy Trial Act and its factual findings for clear error. *United States v. Marks*, 209 F.3d 577, 586 (6th Cir. 2000). A finding of fact by the district court is clearly erroneous when, "although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)) (internal quotations marks omitted). The Speedy Trial Act, 18 U.S.C. §§ 3161-74, requires that:

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). Section 3161(h) excludes certain pretrial delays from the seventy day period, which have the effect of stopping the speedy trial clock. If the defendant is not brought to trial within seventy non-excludable days, the indictment on which he is charged "shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

The parties agree that the speedy trial clock began to run on April 2, 2007, the date of Montgomery's indictment. The parties also agree that the clock ran for a period of 50 days until the May 23rd filing of the parties' joint motion to continue. They differ, however, on when this excludable period ended. The government argues that the excludable period ended when the district court's order granting the motion to continue was filed; Montgomery argues that the period ended on June 6 when the district court held a telephonic hearing on the motion to continue. We agree with the government on this issue. "[D]elay resulting from any pretrial motion, from the filing of the

motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is clearly excludable, 18 U.S.C. § 3161(h)(1)(D)[1] , as is any delay "during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H)[2]. Thus, the delay from May 23 through the date of the court's order granting the joint motion to continue, June 11, 2007, is excludable.[3] *See United States v. Savoca*, 739 F.2d 220, 223 (6th Cir. 1984).

The district court's June 11 order set the case for further proceedings on July 30, finding that the time period "between June 18, 2007 and July 30, 2007, is excludable time in the interest of justice in order to permit the defendant to prepare for trial." The parties agree that the excludable time runs through July 30 and the government concedes that the time between the June 11 order and June 18 (six days) is non-excludable. Thus, to this point in the calculation, a total of 56 days are non-excludable.

In the meantime, Montgomery filed his motion to suppress on July 15 and the district court properly found the period between the filing of the motion and its disposition on October 22 to be excludable pursuant to 18 U.S.C. § 3161(h)(1)(D).[4] That brings us to the major point of contention

---

[1] At the time pertinent to this case, this section was numbered as § 3161(h)(1)(F).

[2] At the time pertinent to this case, this section was numbered as § 3161(h)(1)(J).

[3] Although the government argues that the excludable period ended on June 12, 2007, the district court's docket sheet indicates that the order was signed on June 11, 2007, but entered into the district court's electronic docketing system on June 12. The date of disposition is thus June 11.

[4] Montgomery argues for the first time on appeal that there is a period of non-excludable time between the filing of the motion to suppress and its disposition on October 22. He first argues that eight days between September 10, the date set for the government's response to the motion to suppress, and September

and disagreement between the parties–the 85 day period between October 22, 2007, and January 15, 2008. If the time is not excludable, then there is a violation of the Speedy Trial Act. In the district court and here, Montgomery argues that these days are non-excludable. The government, on the other hand, argues that the days are excludable because plea negotiations were ongoing during that period of time. The district court, in denying Montgomery's motion, agreed with the government, holding that the parties were engaged in plea bargaining from October 22, 2007, through January 15, 2008, and the 85 day period was excludable under the Speedy Trial Act.

As noted above, although the Speedy Trial Act requires trial within 70 days of indictment, the Act excludes certain pretrial delays from the 70 day period. Under the Act, "[a]ny period of delay resulting from other proceedings concerning the defendant" is excluded from the calculation. 18 U.S.C. § 3161(h)(1). Subsections (A) through (J) of § 3161(h)(1) list a number of examples of these proceedings for which the time is explicitly excluded. *Id.* (2008). The listed proceedings are "only examples of delay 'resulting from other proceedings concerning the defendant' and are not

---

18, the date the government's late response was actually filed, is non-excludable. He also argues for the first time that the government's filing of a supplemental response to the motion to suppress on October 3 creates a period of non-excludable time, although he does not develop an argument in support of his position. Since Montgomery did not make these arguments in the district court, our review would be for plain error on these issues. *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005); Fed. R. Crim. P. 52(b). Montgomery, however, does not argue that there is plain error. We, therefore, are not required to address these issues.

Even if we reviewed the claims on the merits, however, we would find them lacking. The statute itself and our case law interpreting it are clear that the time between the filing of the motion and its disposition is excludable. 18 U.S.C. § 3161(h)(1)(F); *United States v. Tinklenberg*, 579 F.3d 589, 594-95 (6th Cir. 2009) (holding, *inter alia*, that the day of the filing of the pretrial motion through the day the continuance disposes of it is excluded from the speedy trial period). In addition, Montgomery offers no authority, either based on the language of the statute or case law, which supports his argument that the filing of the government's supplemental response somehow created non-excludable time. Our research, likewise, has revealed no legal authority for his position.

intended to be exclusive." *United States v. Bowers*, 834 F.2d 607, 610 (6th Cir. 1987). We have held that plea negotiations are an example of "other proceedings" not specifically listed in § 3161(h)(1) which may be excluded from the Speedy Trial Act calculation. *Id.* (citing *United States v. Montoya*, 827 F.2d 143, 150 (7th Cir. 1987)); *see also United States v. Dunbar*, 357 F.3d 582, 593 (6th Cir. 2004), *vacated and remanded* on other grounds by *Dunbar v. United States*, 543 U.S. 1099 (2005).

Although counsel for Montgomery stated at oral argument that both the district court's legal conclusions and factual findings are erroneous, Montgomery appears to concede that the district court's interpretation of the Speedy Trial Act is correct,[5] arguing rather that the court's factual findings are erroneous "because no other proceedings [plea negotiations] in regard to defendant were ongoing." [Brief of Defendant-Appellant, 21]. In any event, the district court properly concluded that plea negotiations were excludable from the Speedy Trial Act calculation as "other proceedings" pursuant to 18 U.S.C. § 3161(h)(1). We will therefore focus our attention on whether the district court's factual finding that plea negotiations were ongoing between October 22, 2007, and January 15, 2008 is clearly erroneous.

We conclude that the district court's factual finding that plea negotiations were ongoing during the 85 day period in question was not clearly erroneous. Although never committed to writing or conveyed as a formal offer by either Montgomery or the government, the record

---

[5] At the hearing on the motion to reconsider the district court's denial of his motion to dismiss, Montgomery's counsel stated that the motion to reconsider "does not challenge any of the court's legal conclusions or reasoning," only "the factual underpinning of the court's ruling." See Tr. of Mot. Hrg., March 19, 2008, p. 66.

establishes that plea discussions were ongoing even before the court's ruling on Montgomery's motion to suppress. The Assistant United States Attorney ("AUSA") assigned to the case testified that his discussions about the case with defense counsel conveyed to him the impression that the motion to suppress "would be a dispositive motion," and that, after the court ruled on the suppression motion, "the defendant was going to enter a plea." Tr. of Mot. Hrg., March 19, 2008, 33-34. Montgomery's counsel testified that "[b]ecause of the possibility that the United States could file two 851 informations against [the defendant], coupled with the fact that he could be sentenced as a career offender" and "faced . . . a significant risk of prolonged" imprisonment, he did "not doubt that [he] could have left [the AUSA] with the impression" that Montgomery would likely reconsider the risk of going to trial. *Id*. at 6. Montgomery's attorney acknowledged discussions with the AUSA "under which [Montgomery] could minimize his sentencing risk by entering a guilty plea." *Id*. at 8.

Montgomery's attorney acknowledged advising the AUSA that, should Montgomery lose on the suppression issue, he would "advise [Montgomery] to consider a reasonable plea offer." *Id*. at 23. Montgomery's attorney recalled two conversations that involved discussions about a possible plea agreement after the October 22 adverse ruling on the motion to suppress. These discussions generally involved the possibility of a conditional guilty plea allowing Montgomery to appeal the denial of his suppression motion and an agreement by the government not to file the notices of enhancement under 18 U.S.C. § 851, thereby allowing Montgomery to avoid a possible mandatory life sentence.

Montgomery's attorney acknowledged a further discussion with the AUSA during which he inquired whether the possibility of a guilty plea "was still on the table." *Id*. at 25. The AUSA

9

recalled responding that the possibility of a conditional guilty plea was no longer an option simply because there would be no benefit to the government from that type of agreement. The AUSA did suggest to defense counsel that Mongtomery consider pleading guilty to the charges and, if he did so, the government would not file the § 851 notices of enhancement and Montgomery would be free to argue for any sentence as low as ten years (the mandatory minimum without the § 851 notices). Both attorneys believed this last discussion to have occurred in late December, before Christmas, although neither was certain of the exact date. Montgomery's attorney did, however, peg the date as one on which another client was being sentenced. By reference to the court's docket sheet for that defendant, the district court found that date to have been January 4, 2008. On this record, the district court's factual finding that plea negotiations occurred during the disputed period was not clearly erroneous.

Montgomery further argues that, to the extent any delay is excludable as plea negotiations, that period of delay ended on January 4, not January 15, as the district court found. While it is true that the last conversation between counsel occurred on January 4, it does not logically follow that the excludable delay for plea negotiations ended on that date. That is so because the AUSA testified, and defendant's counsel could not dispute, that the AUSA expected a response from Montgomery after the discussion about the possible open plea and the government agreement not to file the § 851 notices. While not exactly the same situation as in *Bowers* where a defendant waited 15 days to notify the government of his rejection of a tentative plea agreement, this is, however, the kind of "sandbag[ging]" about which the *Bowers* court was concerned. *Bowers*, 834 F.2d at 609. The district court's finding that the period of time between January 4 and January 15 was excludable

under these circumstances is reasonable and not clearly erroneous, especially where the period of

delay included only seven business days.[6]

Montgomery makes much in his argument of his counsel's refusal to characterize these

discussions as "plea negotiations" and the fact that neither counsel ever made a formal written offer

for a plea agreement. He characterizes the discussions between counsel as "give and take," not

amounting to plea negotiations. These arguments read too much into our *Bowers* decision. Nothing

in *Bowers* requires that plea negotiations take a particular form or follow a particular format, or that

the negotiations result in a formal plea agreement which resolves the case. This would make plea

negotiations excludable only if the end result of the process were a formal agreement. And, while

we are not called upon in this case to decide exactly what the precise contours are of conduct which

might constitute excludable plea negotiations under the Speedy Trial Act, it clearly includes the kind

of "give and take" which characterized the discussions between counsel in this case.[7]

---

[6] January 5 and 6, 2008, were a Saturday and Sunday. Likewise, January 12 and 13 were a Saturday and Sunday.

[7] Montgomery asserts for the first time on appeal that there is an additional period of non-excludable delay in this case, i.e. from March 6 to March 16, 2008, the period of 11 days between the district court's order denying the motion to dismiss on Speedy Trial Act grounds and the date of Montgomery's filing of his motion to reconsider the district court's denial of his motion to dismiss. See Brief of Defendant-Appellant, 17. Montgomery did not raise this issue in the district court. Our review, therefore, is for plain error, but Montgomery again does not argue plain error. We need not, as a result, address the issue. See n. 4, *supra*.

Even if we consider the 11 additional days as non-excludable, however, which they appear to be, that would not change the result in this case. The effect of the 11 days, given our ruling on the period between October 22, 2007, and January 15, 2008, would be to put the number of non-excludable days at 67, still within the requirements of the Speedy Trial Act.

Montgomery also raises counsel's failure to claim these 11 days as non-excludable as one of the specific examples alleged by him as to the ineffectiveness of trial counsel, an issue we do not address. *See infra*, p. 19.

Montgomery raises one other issue concerning his Speedy Trial Act claim which we must address. He argues that the period between October 22, 2007, and January 15, 2008, "was erroneously deemed an excluded period of time due to its being considered as an 'ends of justice' exclusion warranting a continuance for the purpose of ongoing plea negotiations." Brief of Defendant-Appellant,18. Relying on *United States v. Richmond*, 735 F.2d 208 (6th Cir. 1984), Montgomery argues that the district court erroneously granted a retroactive continuance and did not make its findings as to the excludability of time until after he had moved for dismissal of the indictment.

Montgomery's argument, however, confuses the requirements for an "ends of justice" continuance under 18 U.S.C. § 3161(h)(7)(A)[8] and the periods of time which are *automatically* excludable under § 3161(h)(1), as, apparently, did the district court. The district court, in its March 5, 2008 order found "that the period of time from October 22, 2007 through January 15, 2008 is excludable time as a permissible delay resulting from other proceedings [plea negotiations] concerning the defendant, and finding[s] that the ends of justice served by the continuance of the matter in light of ongoing plea negotiations outweighs the best interest of the public and the defendant in a speedy trial."

Despite the district court's inartful language in its March 5 order, *Richmond* is inapposite here. In *Richmond*, the trial court had ordered a continuance but had not entered the findings

---

[8]  At times pertinent to this case, this section was numbered as § 3161(h)(8)(A).

required by § 3161(h)(8)[9] until the court was faced with a motion to dismiss the case for violation

of the Speedy Trial Act. *Richmond*, 735 F.2d at 210. The district court then made findings that the

continuance satisfied the ends of justice exclusion. *Richmond* held that, while a district judge is not

required to enter his findings at the same time he grants a continuance, the decision to grant the

continuance must actually have been based on the reasons set out in the judge's findings and the

district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making

the findings which would have justified an ends of justice continuance and retroactively continuing

the case. *Id.* at 214-216.

The difficulty with Montgomery's reliance on *Richmond* is that the district court in the

instant case did not grant a continuance of Montgomery's trial retroactively based on findings made

subsequent to the grant of a continuance, although the court's inartfully drafted order can be read

as an attempt to do so. Rather, the district court found that the period between October 22, 2007,

and January 15, 2008, was excludable because of "other proceedings" involving the defendant and

the period of excludable time is not related to an "ends of justice" continuance. We do not find that

*Richmond* or any of the cases dealing with an "ends of justice" continuance cited by Montgomery

have any application in this case.[10]

---

[9] See n. 8, *supra*.

[10] We do note, however, that this case vividly demonstrates the necessity for our warning in *United States v. Hill*, 172 F.3d 50, 1999 WL 17645 (6th Cir. 1999) (unpublished table disposition). We noted in that case "that allowing the speedy trial clock to stop during plea bargaining may lead to otherwise unjustifiable delays in derogation of the Act's requirements and underlying policies." *Hill*, 1999 WL 17645 at *2, n.3. As we noted in *Hill*, this issue would not be before this Court if the district court had, at the time of its October 22, 2007 denial of the motion to suppress, heeded our admonition to set a timetable for completion of plea negotiations. We once again emphasize "that the exclusion for plea bargaining

**B.      The Search Warrants For 1117 Plum Run Road and 106 Guiness Court**

In an appeal of the denial of a motion to suppress, we review a district court's factual findings for clear error and its legal determinations *de novo*. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). A finding of probable cause is a legal determination, which we review *de novo*. *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008). Nevertheless, "[t]he evidence must be viewed in a light most likely to support the decision of the district court." *Frazier*, 423 F.3d at 531.

Montgomery challenged the search warrants at issue in this case on two grounds in the district court. First, he argued that the search warrants were not issued by a neutral and detached magistrate because the issuing state court judge had previously been a state prosecutor when his office prosecuted Montgomery and other members of Montgomery's family on felony drug trafficking charges and had personally participated in the prior prosecution of Montgomery. Montgomery candidly admitted to the district court, however, that he had "no evidence that Judge Simms's extra-judicial opinions or information about the defendant affected his determination of probable cause." Secondly, Montgomery argued that the affidavits in support of the search warrants lacked probable cause and failed to accurately describe the premises to be searched. The district court denied the motion to suppress. Montgomery raises both claims in this appeal. We will address them in turn.

---

proceedings allowed under *Bowers* should not be viewed as unlimited, or otherwise abused." *Id*.

No. 08-5898
*United States v. Montgomery*

###     1.     Neutral and Detached Magistrate

It has long been established that, to be valid under the Fourth Amendment, a search warrant must be issued by a neutral and detached magistrate. *Shadwick v. City of Tampa*, 407 U.S. 345, 350, (1972) (citing *Johnson v. United States*, 333 U.S. 10, 14 (1948)). In fact, the Supreme Court has held that "[t]he purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search." *Steagald v. United States*, 451 U.S. 204, 212 (1991).

In the context of a trial, we have refused to adopt a *per se* rule that judges must disqualify themselves where they prosecuted the defendant in an earlier proceeding and place the burden of showing actual bias on the defendant. *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980); *Jenkins v. Bordenkircher*, 611 F.2d 162, 167 (6th Cir. 1979). The Supreme Court has held that opinions formed by judges based on what they learned in earlier proceedings does not qualify as bias or prejudice. *Liteky v. United States*, 510 U.S. 540, 550-51 (1994).

The search warrants in this case were issued by Nelson County, Kentucky, Circuit Court Judge Charles C. Simms, III. Prior to his service as a judge, Judge Simms was an Assistant Commonwealth Attorney for Nelson County. As an Assistant Commonwealth Attorney, Judge Simms participated in the state court prosecution of Montgomery on various drug charges between 1998 and 2003. Judge Simms's last involvement with a prosecution of Montgomery was on May 8, 2003. His office was also responsible for the prosecution of other members of Montgomery's family on drug charges. Judge Simms became a circuit court judge on June 20, 2003. The applications for search warrants in this case were presented to Judge Simms on March 13, 2007,

15

almost four years after his last involvement in the state court prosecution of Montgomery. The charges in this case are unrelated to the prior prosecution in which Judge Simms participated.

Montgomery has not met his burden of showing bias on the part of Judge Simms. He has offered no evidence of actual bias on the part of the issuing judge and admits that he has no evidence that Judge Simms's prior involvement with, and knowledge of, Montgomery had any bearing on the probable cause determination. He simply asks us to speculate that the prior involvement of Judge Simms in the state court prosecution of Montgomery "may have led [Judge Simms] to place more emphasis on the police's opinion regarding the presence of probable cause in a warrant application because he had previously worked with the police in the prosecution of the defendant for similar offenses when he served as a prosecutor." Brief of Defendant-Appellant, 41. We decline to do so.

Montgomery raises an alternative argument that the district court erred when it decided his motion to suppress without an evidentiary hearing. A district court is required to hold an evidentiary hearing "when the defendant has set forth contested issues of fact that bear upon the legality of a search." *United States v. Black*, 181 F.3d 104, 1999 WL 357759 *3 (6th Cir. 1999) (unpublished table disposition, citing *United States v. Mejia*, 69 F.3d 309, 318 (9th Cir. 1995). We review a district court's decision whether to hold an evidentiary hearing on a motion to suppress for an abuse of discretion. *United States v. Downs*, 173 F.3d 430, 1999 WL 130786 *3 (6th Cir. 1999) (unpublished table disposition).

We find no abuse of discretion here. Montgomery did not ask for an evidentiary hearing before the district court and he specifically acknowledged that there were no contested issues of fact. Under these circumstances, the district court was not required to hold an evidentiary hearing.

### 2. Probable Cause

The Fourth Amendment prohibits search warrants unless they have been issued "upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that "indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (internal citations and quotation marks omitted). In other words, the affidavit "must state a nexus between the place to be searched and the evidence sought." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008 (quoting *United States v. Bethal*, 245 F. App'x. 460, 464 (6th Cir. 2007)). In reviewing the sufficiency of the evidence, we are limited to examining the information contained within the four corners of the affidavit. *Frazier*, 423 F.3d at 531. Nevertheless, when considering that information, we look to the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983).

### a. 1117 Plum Run Road

Montgomery's complete argument concerning probable cause for the search warrant issued for 1117 Plum Run Road is contained in one short paragraph of his appellate brief:

> . . . concerning the 1117 Plum Run Road address, the warrant itself provided for the search of 1197 Plum Run Road. Three of the first four houses on Plum Run Road actually fit the description provided. The warrant was not sufficient as it failed to describe the location with sufficient particularity.

Brief of Defendant-Appellant, 49. The government concedes, as it must, that the address listed in the search warrant as the address to be searched was off by one digit in that it stated the address as 1197 Plum Run Road instead of 1117 Plum Run Road.

17

The particularity requirement for a search warrant is met "if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). In determining whether the description of the place to be searched is sufficient, the inquiry is whether the place to be searched is described with sufficient particularity "'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (quoting *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir.1989)). Thus, an incorrect description of the premises does not automatically invalidate the warrant.

We find the particularity requirement of the Fourth Amendment to have been met here. Although the premises are referred to in the search warrant as 1197 Plum Run Road, the warrant contains a detailed description of the premises as a "single story brown brick residence with black shutters and white trim." The residence has a "shingle style roof and a concrete driveway." The search warrant also had precise directions to the residence and had detailed descriptions of automobiles located on the premises. Attached to the warrant was a photograph of the residence to be searched. Under these circumstances, there was no reasonable probability that the executing officer might mistakenly search one of the other three houses on the street that fit the description of the premises to be searched.

### b. 106 Guiness Court

As with his argument regarding the search warrant for 1117 Plum Run Road, Montgomery states his argument that the warrant for 106 Guiness Court is invalid in one paragraph of his appellate brief:

> In the instant case, as relevant to the 106 Guiness Court address, the affidavit obtained was lacking any indicia of probable cause because it failed to contain sufficient evidence to establish that the drugs allegedly procured by the CI, actually came from 106 Guiness Court. The affidavit supporting issuance of the warrant is based upon speculation and unsupported by any material corraboration.

Brief of Defendant-Appellant, 49. The government responds that the affidavit contained sufficient evidence to establish probable cause to believe that drugs would be found at 106 Guiness Court.

Giving great deference to the issuing judge's determination of probable cause, as we must, we agree with the government. The affidavit, signed by the lead investigator, Detective Roby, stated that a confidential informant had purchased three ounces of crack cocaine from Montgomery on March 13, 2007. The CI had informed Detective Roby that Montgomery had left his residence with no crack cocaine in his possession, had traveled to 106 Guiness Court to obtain the crack cocaine, and then returned to his residence where the crack cocaine was sold to the CI. The affidavit recites that Montgomery was followed by the officer from his residence to 106 Guiness Court and back to his residence, and that he made no other stops, corroborating what the CI had told police. The information contained in the affidavit was sufficient to establish probable cause that crack cocaine would be found at 106 Guiness Court.

### C.      Ineffective Assistance of Counsel

Montgomery, while acknowledging the general rule that this court will generally not entertain claims of ineffective assistance of counsel on direct appeal, nevertheless urges us to "consider his claims of IAC as contributing to the underlying violation" raised by his direct appeal. The government responds that the record is adequate for us to conclude that Montgomery's claim of ineffective assistance of counsel is without merit, and urges us to so hold.

We reach ineffective assistance of counsel claims on direct appeal only if the record is sufficiently developed to permit us to review the claims. *United States v. Jones*, 489 F.3d 243, 255 (6th Cir. 2007). The presumption against resolving an ineffective assistance claim on direct appeal "stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues." *United States v. Brown*, 332 F.3d 363, 368-69 (6th Cir. 2003). "[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

We conclude that Montgomery's claims of ineffective assistance of counsel are best asserted in a proceeding under 28 U.S.C. § 2255. Although many of Montgomery's claims of ineffective assistance of counsel are premised on claims decided by us in this direct appeal, we believe it better for the matter to be decided after a complete and adequate record on the issues has been developed in the district court.

## III.    Conclusion

For the reasons set forth above, we find Montgomery's claims of error by the district court to be without merit and we therefore AFFIRM the judgment of the district court.  We decline to reach his claims of ineffective assistance of counsel, without prejudice to Montgomery's right to raise the claims in a proceeding pursuant to 28 U.S.C. § 2255.