**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0075n.06

No. 12-5068

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 16, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| BEAU C. VAUGHAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  BOGGS, ROGERS, and STRANCH, Circuit Judges.

PER CURIAM.  Beau C. Vaughan appeals the denial of his motion to suppress and his subsequent conviction for conspiracy to distribute or possess with intent to distribute marijuana. We affirm.

A federal grand jury charged Vaughan with conspiracy to distribute and possess with intent to distribute one hundred kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Vaughan filed a motion to suppress, which the district court denied after an evidentiary hearing. Vaughan proceeded to trial, and a jury found him guilty of the marijuana conspiracy.  The district court sentenced Vaughan to three hundred months of imprisonment.  This timely appeal followed.

Vaughan asserts that the district court erred in denying his motion to suppress because his arrest lacked probable cause.  "When reviewing the denial of a motion to suppress, we review the

district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010) (internal quotation marks omitted). We may affirm the denial on any ground supported by the record. *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012).

At the suppression hearing, Trooper Michael Kilpatrick testified that Agent Darryl Richardson of the Tennessee Bureau of Investigation informed him that Vaughan would be delivering a quantity of marijuana to an O'Charley's parking lot and directed him to develop probable cause to stop Vaughan's vehicle. Trooper Kilpatrick saw the vehicle approaching the O'Charley's and observed that Vaughan was not wearing a seatbelt. Trooper Kilpatrick turned into the parking lot behind Vaughan's vehicle, activated his lights, and initiated the stop. When he approached the driver's side of the vehicle, Trooper Kilpatrick noticed that Vaughan's eyes were bloodshot and smelled the odor of burnt marijuana coming from the vehicle. Shortly after Trooper Kilpatrick stopped Vaughan's vehicle, Trooper Wayne Dunkleman arrived with his drug-detection dog. Trooper Dunkleman also smelled the odor of burnt marijuana coming from Vaughan's vehicle.

Trooper Kilpatrick asked Vaughan to get out of the vehicle and issued him a citation for not wearing his seatbelt and not having proof of insurance. Vaughan denied consent to search his vehicle, and the officers proceeded to conduct a canine sniff. Trooper Dunkleman's dog alerted to the driver's side door of Vaughan's vehicle. Trooper Kilpatrick then asked Vaughan to sit in the back of his patrol car while the officers searched his vehicle. According to Trooper Kilpatrick, he did not place Vaughan under arrest at that time. The subsequent search of Vaughan's vehicle revealed approximately $19,000 in cash; a commercial driver's logbook; airline and rental car

documents for Vaughan's recent trip to McAllen, Texas, a source city for illegal drugs; dryer sheets; trash bags; marijuana residue; and a suspected drug ledger. After Agent Richardson arrived and reviewed the evidence found in Vaughan's vehicle, he spoke with Vaughan and advised him of his *Miranda* rights. Vaughan cooperated with Agent Richardson.

The district court concluded that Vaughan was under arrest after he was placed in the patrol car, noting that Trooper Kilpatrick confiscated Vaughan's cell phone, placed him in the rear of the patrol car beside a dog in a cage; told him that he was being detained and was not free to leave; and ultimately detained him for approximately one and a half hours. We assume without deciding that placing Vaughan in the rear of the patrol car constituted an arrest. *But see United States v. Jacob*, 377 F.3d 573, 580 (6th Cir. 2004) (holding that a detention, during which the defendant was placed in a police car, "did not ripen into an unlawful arrest" because the officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions"). Regardless, the officers had probable cause for Vaughan's arrest when they placed him in the patrol car. In determining whether probable cause exists for an arrest, "we must determine whether at that moment the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that a suspect had committed or was committing an offense." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (quoting *United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006)). When they placed Vaughan in the patrol car, the officers had information that Vaughan would be delivering a quantity of marijuana to the O'Charley's parking lot, they had smelled the odor of burnt marijuana coming from his vehicle, and the drug-detection dog had alerted to his vehicle's door. *See Florida*

*v. Royer*, 460 U.S. 491, 506 (1983) (stating that a positive result by a drug-sniffing dog "would have resulted in [the defendant's] justifiable arrest on probable cause"). The district court properly held that Vaughan's arrest was supported by probable cause.

Vaughan also contends that there was a fatal variance between the single conspiracy charged in the indictment and the multiple conspiracies proven at trial. We review *de novo* whether a variance has occurred. *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008). "A variance to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006). "If an indictment alleges one conspiracy, but the evidence can reasonably be construed only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." *United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982).

The indictment charged Vaughan with conspiring with others to distribute and possess with intent to distribute one hundred kilograms or more of marijuana. Vaughan asserts that the evidence at trial demonstrated multiple conspiracies between himself and each of his customers—"a rimless wheel conspiracy." *See Swafford*, 512 F.3d at 841-42. But "[c]onspiracies to distribute narcotics, which normally involve numerous sales and resales of drugs until they reach the ultimate consumers, are often 'chain' conspiracies." *Warner*, 690 F.2d at 549. "Because the success of participants on each level of distribution is dependent upon the existence of other levels of distribution, each member of the conspiracy must realize that he is participating in a joint enterprise, even if he does not know the identities of many of the participants." *Id*. Viewed in the light most favorable to the

government, the evidence at trial supported a finding of a single chain conspiracy. Vaughan obtained large amounts of marijuana from a source in Mexico, used a driver to transport the marijuana to Tennessee, and then sold or fronted the marijuana to others, who in turn resold or fronted the marijuana. *See id.*; *see also United States v. Robinson*, 547 F.3d 632, 642 (6th Cir. 2008).

Even if a variance existed, Vaughan cannot establish prejudice. "Where the evidence demonstrates only multiple conspiracies, a defendant is prejudiced if the error of trying multiple conspiracies under a single indictment substantially influenced the outcome of the trial." *Caver*, 470 F.3d at 237. Vaughan contends that the government, if required to try multiple conspiracies individually, would have been unable to prove a conspiracy involving one hundred kilograms of marijuana. The evidence, viewed in the light most favorable to the government, demonstrated that Vaughan provided a customer identified in his ledger as "KY" with nearly four hundred pounds of marijuana—well in excess of one hundred kilograms.

For the foregoing reasons, we affirm Vaughan's conviction.