**NOT RECOMMENDED FOR PUBLICATION**
File Name: 23a0206n.06

No. 21-6132

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 01, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| TINA R. PARTIN, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: GRIFFIN, STRANCH, and DAVIS, Circuit Judges.

GRIFFIN, Circuit Judge.

After her husband was indicted on drug charges, Tina Partin took over his methamphetamine business. Eventually, she too was charged with, and convicted of, conspiring to distribute methamphetamine and oxycodone. She now challenges that conviction. Finding no error, we affirm.

I.

Tina Partin, Kim Myrick, and seven other coconspirators were indicted for conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. After most defendants pleaded guilty, the government filed a superseding indictment charging only Myrick and Partin with conspiring "together and with others" to distribute methamphetamine and oxycodone. Myrick too pleaded guilty, so Partin stood trial alone.

Partin's husband, Everett Miller, testified against her. Miller explained that he had served jail time for drug charges; after his release in 2016, Ronald Barksdale, a contact from prison, convinced him to start selling methamphetamine and oxycodone again. At some point, Miller introduced Partin to Barksdale. But Miller's drug trade ended when he was arrested again in February 2017.

Barksdale corroborated Miller's account, testifying that Miller "talked [Partin] into covering for him" after his arrest, and told Barksdale that Partin "would take over[.]" Barksdale testified that after he "introduced [Partin] to people" whom she needed to know, he brought her nine ounces of methamphetamine. He continued to supply her with "[t]housands" of oxycodone pills per month and sold her about a pound of methamphetamine at a time—sometimes as often as every two days.

Several other government witnesses, all of whom were either users or mid-level dealers, testified that Partin supplied them with drugs. Take Michelle Garren, for example. She purchased methamphetamine and oxycodone from Partin. At one point, Partin asked Garren if she would help Partin "get rid of" a large quantity of methamphetamine. Garren agreed, and went on to purchase at least five ounces of methamphetamine and one hundred oxycodone pills from Partin every other day. And Paula Roark linked Partin to Miller and Barksdale—she testified that she purchased about one hundred oxycodone pills per week from Miller until he was arrested, at which point she began to purchase pills to resell from Barksdale and Partin.

Partin testified in her own defense. She admitted knowing Barksdale but denied taking over Miller's drug trade. Partin maintained that all the government's witnesses were lying, and that she was the only witness telling the truth.

The jury found Partin guilty of conspiring to distribute methamphetamine and oxycodone. She was sentenced to 220 months' imprisonment. Partin timely appealed.

II.

Partin first argues that there was insufficient evidence to support her conviction. Such a claim "faces a high bar" on appeal. *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). We must uphold a jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Circumstantial evidence alone is enough to support a conviction. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). We cannot "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id*. (citation omitted).

On appeal, Partin argues that the government failed to establish an agreement between Partin and Myrick (as charged in the second superseding indictment), so there is insufficient evidence to sustain her conviction. But below, Partin argued that there was insufficient evidence only because the government's witnesses were not credible, given that every witness was either a drug user or incarcerated and seeking a sentence reduction in exchange for his or her testimony. Indeed, Partin conceded that the government had otherwise produced testimony "that would tend to make [her] guilty of what she's charged with." By making her Rule 29 motion on specific grounds, Partin forfeited all other grounds to support her challenge, including the argument raised here. *See United States v. Hamm*, 952 F.3d 728, 740 (6th Cir. 2020) ("Because [defendants] made

Rule 29 motions on specific grounds at trial, and did not include the arguments that they now make on appeal, they forfeited these other arguments, and we will not consider them.").

And even if the arguments are sufficiently related such that Partin did not forfeit this argument, the government was not required to prove that Partin conspired specifically with Myrick. The government need not prove that each conspirator agreed with every other conspirator; it must "only show that each alleged conspirator had knowledge of and agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Smith*, 320 F.3d 647, 653 (6th Cir. 2003). In this context, that means the government only had to show that two or more people agreed to violate drug laws and that Partin knew of and joined in that agreement. *See United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). It did so here, given the testimony that Barksdale frequently supplied Partin with large amounts of methamphetamine and oxycodone, which she sold to mid-level dealers and users. Thus, any rational juror could conclude that Partin conspired to distribute drugs even without a reference to Myrick at trial.

III.

Next, Partin argues that there was a fatal variance between the terms of the indictment and the evidence presented at trial.

A variance occurs when evidence presented by the government at trial "proves facts materially different from those alleged in the indictment." *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008) (citation omitted). A variance is "fatal" and requires reversal when the discrepancy affects the substantial rights of the defendant. *United States v. Hurst*, 951 F.2d 1490, 1501 (6th Cir. 1991) (adding that "[s]ubstantial rights are affected only when a defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions" (internal quotation marks omitted)).

When, as here, a defendant does not raise such a claim at trial, we review claims of variance for plain error. *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008). To establish plain error, there must be "(1) error, (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted). It is defendant's burden to establish that a variance occurred. *Kuehne*, 547 F.3d at 683.

Partin argues that the indictment alleged a single overarching conspiracy to distribute drugs, but the evidence at trial demonstrated only multiple buyer-seller relationships (a so-called "rimless wheel conspiracy"). *See Swafford*, 512 F.3d at 841–42. But "[c]onspiracies to distribute narcotics, which normally involve numerous sales and resales of drugs until they reach the ultimate consumers, are often 'chain' conspiracies." *United States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982). For example, we have held that a "single chain conspiracy" existed when a defendant "obtained large amounts of marijuana from a source in Mexico, used a driver to transport the marijuana to Tennessee, and then sold or fronted the marijuana to others, who in turn resold or fronted the marijuana." *United States v. Vaughan*, 512 F. App'x 459, 461 (6th Cir. 2013) (per curiam). The same was true when other defendants worked together to purchase drugs, evade law enforcement, and "repeatedly engaged in regular, high-volume drug sales." *United States v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006). And "evidence of repeat purchases from a single source and large volumes of narcotics creates an inference of conspiracy." *United States v. Pritchett*, 749 F.3d 417, 431 (6th Cir. 2014) (citation omitted).

There was no error here, let alone one that was plain. The evidence, when viewed in the light most favorable to the government, clearly demonstrates a chain conspiracy. Barksdale supplied the drugs, and Partin took over Miller's distribution role. Partin distributed

methamphetamine in large quantities to both dealers and users. This amounts to far more than "a hodge-podge of buyer-seller transactions." Instead, it demonstrates that Partin and her coconspirators formed a chain conspiracy to sell methamphetamine and oxycodone.

This hierarchy distinguishes Partin's case from *Swafford*. 512 F.3d at 842. There, the defendant supplied 20 "cooks" with iodine, a chemical used to produce methamphetamine. *Id.* But the government failed to demonstrate the existence of a common goal or enterprise, so the proofs at trial demonstrated only a "rimless wheel conspiracy," which was a fatal variance from the single conspiracy charged in the indictment. *Id.* at 842–44. We also recognized that the case did not present a "'chain conspiracy' where the existence of a single conspiracy is proved by the fact that operators at different levels are connected by a common scheme or enterprise." *Id.* at 842 n.3. Conversely, the chain is clear here: Barksdale at the top, Miller and Partin below him, with mid-level dealers and individual users below them. Thus, *Swafford* is distinguishable, and no variance occurred.

IV.

Finally, Partin argues that her right to a speedy trial under the Speedy Trial Act (STA), 18 U.S.C. § 3161(c)(1), was violated, given the lengthy delay between her 2018 arraignment and 2021 trial. We agree with the district court that the delay did not violate the Speedy Trial Act.

The STA requires a defendant's trial to begin within 70 days from when she is charged or makes an initial appearance, whichever is later. § 3161(c)(1). If more than 70 days elapse, "the information or indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2). "The Act, however, excludes from the 70-day period delays due to certain enumerated events." *Bloate v. United States*, 559 U.S. 196, 199 (2010). "[O]nce a defendant makes a *prima facie* showing that more than 70 days have passed, the government bears the burden of proving sufficient excludable

time by a preponderance of the evidence." *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009).

Partin was arraigned on May 30, 2018, at which point trial was set to begin in July 2018. The court granted four continuances related to evaluating Myrick's competency; Partin never objected. The government also moved to continue when Myrick received a four-month course of treatment related to his competency. Partin responded to this motion and noted that she had no objection, "so long as the Trial date is not continued for more than 30 (thirty) days from the current trial date." The court moved trial back more than thirty days, but Partin did not file any objection to the court's rescheduling order, nor did she object to the next two continuances the court ordered. In March 2020, the COVID-19 pandemic forced the courthouse to close, so trial was again continued several times before it was ultimately set to begin in July 2021.

Partin moved to dismiss the indictment under the STA, arguing that the COVID-19 closures violated her right to a speedy trial. The district court found that its orders in response to COVID-19 were appropriate under the STA, so it denied her motion. It reasoned that, although more than 70 days elapsed between Partin's arraignment and the start of her trial, no violation occurred because only 28 days were not excludable under the STA. The case proceeded to trial, finally, on July 20, 2021.

Partin now argues that delays related to Myrick's competency are not excludable time under the Act, so the indictment must be dismissed. Partin did not present this argument to the district court.

We have not yet confronted the question of what standard of review applies to this scenario. Usually, we review de novo the district court's legal rulings on a motion to dismiss under the STA, and its factual findings for clear error. *Sobh*, 571 F.3d at 602. And generally, when a defendant

forfeits a claim before the district court, we will review the forfeited claim only for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993). But the STA provides its own unique wrinkle: if a defendant never brings a motion under the STA, she has forfeited the right to move for dismissal, and we will not review an STA claim on appeal at all. *See* § 3162(a)(2); *United States v. Brown*, 498 F.3d 523, 529–30 (6th Cir. 2007); *United States v. Hagar*, 822 F. App'x 361, 368–69 (6th Cir. 2020). We have rarely had occasion to address what happens when a defendant brings a motion to dismiss under the STA, but does not raise below the precise argument presented on appeal. Based on our unpublished caselaw, it appears that we apply plain-error review to such a claim. *See United States v. Montgomery*, 395 F. App'x 177, 184 n.7 (6th Cir. 2010); *cf. United States v. White*, 920 F.3d 1109, 1114 (6th Cir. 2019) (Griffin, J.). But we need not decide the issue today, because Partin's claim fails even if we review it for plain error.

As above, Partin must show that the district court committed an "obvious or clear" error. *Vonner*, 516 F.3d at 386. "An error is 'plain' when, at a minimum, it 'is clear under current law.'" *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (quoting *Olano*, 507 U.S. at 734). The district court committed no error, given our precedent that "the excludable delay of one defendant is ascribed to that of all his codefendants." *United States v. Cope*, 312 F.3d 757, 776–77 (6th Cir. 2002). Time associated with mental-competency evaluations is excludable under the STA. *Id.* at 777. Thus, the delay in proceedings to determine whether Myrick was competent to stand trial was properly excluded from both Myrick's and Partin's STA clocks. *See id.* at 777. By our calculation, then, only 29 days elapsed under the STA: the period between May 30, 2018, and June 28, 2018, when the first continuance was sought. Partin's STA claim on appeal is meritless.

V.

For these reasons, we affirm the judgment of the district court.